UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MUHAMMED RAHIM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-1385 (PLF) |
| | ) | |
| JOSEPH R. BIDEN, | ) | |
| President of the United States, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

Petitioner Muhammed Rahim is a detainee at the United States Naval Station at

Guantanamo Bay, Cuba ("Guantanamo"). Pending before the Court is Mr. Rahim's Motion for

Order of Immediate Release ("Mot.") [Dkt. No. 170], filed on November 24, 2021. Respondents

filed a response in opposition to Mr. Rahim's motion on December 8, 2021, and Mr. Rahim filed

a reply on December 22, 2021. Respondents filed on January 7, 2022 a notice of errata that

included a document that was previously omitted from their response. Upon careful

consideration of the parties' written submissions and the relevant authorities, the Court will deny

Mr. Rahim's motion.


I. BACKGROUND

Mr. Rahim has been detained at Guantanamo Bay since March 2008. See Mot.

at 2. According to respondents' factual return, Mr. Rahim is detained on the grounds that he was

a translator for and assistant to Osama bin Laden and other al Qaeda leaders. See Unclassified

Factual Return [Dkt. No. 47-1] at 5 (page number citations refer to electronic case filing

numbers).  The factual return alleges that Mr. Rahim facilitated the movement of al Qaeda

personnel and funds and the organization of attacks against coalition forces.  See id.

On July 27, 2009, Mr. Rahim filed a petition for a writ of habeas corpus.  See

Petition for Writ of Habeas Corpus [Dkt. No. 1].  The government filed its factual return on

December 2, 2009.  See Unclassified Factual Return.  On May 5, 2016, this Court granted the

parties' joint motion to stay the habeas petition.  See May 5, 2016 Order [Dkt. No. 142].  Five

years later, on May 7, 2021, the Court granted Mr. Rahim's unopposed request to lift the stay of

the habeas proceedings.  See May 7, 2021 Order [Dkt. No. 164].  The Court initially ordered

respondents to produce, by January 31, 2022, "all reasonably available exculpatory information

as defined by section I.D.2 of the amended case management order ('ACMO') as amended by

this Court . . . , and the automatic discovery required by section I.E.1 of the ACMO, as amended

by this Court, which includes any documents the Government relies on to justify Petitioner's

detention, and any statements of the Petitioner the Government relies upon to justify Petitioner's

detention."  August 4, 2021 Order [Dkt. No. 169] at 1.  After extensions of that deadline,

respondents currently have until April 1, 2024 to complete the automatic discovery required

under the ACMO.  See December 22, 2022 Order [Dkt. No. 183].

## II.  LEGAL STANDARD

The legal authority to detain Mr. Rahim derives from the 2001 Authorization for

Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224.  See Paracha v. Biden,

Civil Action Nos. 04-2022, 21-2567, 2022 WL 2952493, at *3 (D.D.C. July 26, 2022).  Enacted

within a week of the terrorist attacks of September 11, 2001, the AUMF authorizes the President

> to use all necessary and appropriate force against those nations,
> organizations, or persons he determines planned, authorized,
> committed, or aided the terrorist attacks that occurred on

September 11, 2011, or harbored such organizations or persons, in
order to prevent any future acts of international terrorism against the
United States by such nations, organizations or persons.

Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224.  The "detention of individuals . . . , for the

duration of the particular conflict in which they were captured, is so fundamental and accepted

an incident to war as to be an exercise of the 'necessary and appropriate force' Congress has

authorized the President to use." Hamdi v. Rumsfeld, 542 U.S. 507, 518 (2004) (plurality

opinion).

The "most current and precise statement of the government's detention authority"

under the AUMF is found in the National Defense Authorization Act of 2012 ("2012 NDAA"),

Pub. L. No. 112-81, § 1021, 125 Stat. 1298, 1562. Paracha v. Biden, 2022 WL 2952493, at *4.

That statute affirms that the President's authority pursuant to the AUMF "to use all necessary

and appropriate force" includes the authority "to detain covered persons . . . pending disposition

under the law of war." Pub. L. No. 112-81, § 1021(a), 125 Stat. 1298, 1562.  The 2012 NDAA

defines a "covered person" to include "any person . . . who was a part of or substantially

supported al-Qaeda, the Taliban, or associated forces that are engaged in hostilities against the

United States or its coalition partners." Id. § 1021(b)(2), 125 Stat. at 1562; see Ali v.

Obama, 736 F.3d 542, 544 n.1 (D.C. Cir. 2013).  And "[d]etention under the law of war" is

permitted "until the end of the hostilities authorized by the [AUMF]." Al-Alwi v. Trump, 901

F.3d 294, 297 (D.C. Cir. 2018) (quoting Pub. L. No. 112-81, § 1021(c)(1), 125 Stat. at 1562); see

Uthman v. Obama, 637 F.3d 400, 402 (D.C. Cir. 2011); see also Hamdi v. Rumsfeld, 542 U.S.

at 520 (plurality opinion) ("It is a clearly established principle of the law of war that detention

may last no longer than active hostilities." (citing Geneva Convention (III) Relative to the

Treatment of Prisoners of War art. 118, Aug. 12, 1949, 6 U.S.T. 3316, 3406 ("Third Geneva Convention"))).

A Guantanamo detainee may challenge the United States' authority to detain him pursuant to the AUMF by filing a petition for habeas corpus, over which courts in this District have jurisdiction.  See Paracha v. Trump, 453 F. Supp. 3d 168, 177 (D.D.C. 2020) (first citing Boumediene v. Bush, 553 U.S. 723 (2008); then citing Rasul v. Bush, 542 U.S. 466 (2004)); see also Ahjam v. Obama, 37 F. Supp. 3d 273, 278 (D.D.C. 2014) ("The writ of habeas corpus remains the sole means by which Guantanamo detainees may challenge the legality of their detention.").  "In exercising its habeas jurisdiction over detainees at Guantanamo Bay, the Judicial Branch 'serv[es] as an important . . . check on the Executive's discretion in the realm of detentions.'"  Al-Qahtani v. Trump, 443 F. Supp. 3d 116, 121-22 (D.D.C. 2020) (alteration in original) (internal citations omitted) (quoting Hamdi v. Rumsfeld, 542 U.S. at 536 (plurality opinion)).  The government bears the burden of proving by a preponderance of the evidence that Mr. Rahim's detention is lawful.  See Case Management Order, Civil Action No. 04-2022 [Dkt. No. 204] at 4; accord Ali v. Trump, 317 F. Supp. 3d 480, 484 (D.D.C. 2018).

## III.  DISCUSSION

On August 31, 2021, the United States completed its withdrawal from Afghanistan in accordance with an agreement with the Taliban, which had seized power in the country.  See Remarks by President Biden on the End of the War in Afghanistan (Aug. 31, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/08/31/remarks-by-president-biden-on-the-end-of-the-war-in-afghanistan. President Biden declared an end to the "forever war" in Afghanistan.  See id.

Mr. Rahim argues that the authority to detain him has expired "because the war in Afghanistan and with al Qaeda is over." Mot. at 2. He asserts that there is no dispute that the war in Afghanistan is over and that "[t]he war with respect to al Qaeda is over too" because "al Qaeda and the United States are not engaged in active hostilities." Id. at 3. Mr. Rahim states that his motion differs from other cases in which courts have considered and rejected similar arguments from Guantanamo detainees. See id. at 7. He attempts to distinguish Al-Alwi v. Trump by arguing that the U.S. military will not continue to "engage in counterterrorism activities of the kind that prevented a determination [in that case] that active hostilities had ceased in 2017." Id. (citing Al-Alwi v. Trump, 236 F. Supp. 3d 417, 422 (D.D.C. 2017)). He also argues that the court in Gul v. Biden – which addressed an identical argument in the wake of the United States' withdrawal from Afghanistan – erroneously concluded that the United States is still engaged in active operations against al Qaeda. See id. at 7-8 (citing Gul v. Biden, Civil Action No. 16-1462, 2021 WL 5206199 (D.D.C. Nov. 9, 2021)).

Furthermore, Mr. Rahim argues that the end of the war in Afghanistan and with al Qaeda marks the end of the government's authority to detain him under international and domestic law. See Mot. at 4. He asserts that "whether Mr. Rahim is entitled to release is not a question for the Executive; it is a legal question for this Court informed by the law of war." Petitioner's Reply to Respondents' Opposition to Motion for Order of Immediate Release ("Reply") [Dkt. No. 172] at 5. In addition, he argues that "[t]o order Rahim's immediate release, this Court need find only that active hostilities – as understood within the law of war, not the opinion of the government – have ceased." Id.

The Court previously considered and rejected an identical argument in Paracha v. Biden, 2022 WL 2952493. The Court finds Mr. Rahim's arguments unpersuasive for the same

reasons that the Court explained in <u>Paracha</u>.  As an initial matter, "[t]he AUMF authorizes

detention for the duration of the conflict between the United States and the Taliban and al

Qaeda."  <u>Al-Alwi v. Trump</u>, 901 F.3d at 299; <u>accord</u> <u>Ali v. Trump</u>, 317 F. Supp. 3d at 486.

Mr. Rahim is incorrect that the United States' detention authority under the AUMF is

"coterminous" with the war in Afghanistan.  <u>See</u> Mot. at 2.  As the Court explained in <u>Paracha</u>:

> By its statutory text, the AUMF broadly authorizes the United States
> to "use all necessary and appropriate force against those nations,
> organizations, or persons [it] determines planned, authorized,
> committed, or aided the terrorist attacks that occurred on
> September 11, 2001, or harbored such organizations or persons."
> AUMF, Pub. L. No. 107-40, § 2(a), 115 Stat. at 224.  In contrast to
> other authorizations for the use of force, the AUMF contains no
> reference to Afghanistan or any geographical limitations on the use
> of force authorized therein.  <u>Compare</u> <u>id.</u>, <u>with</u> Authorization for
> Use of Military Force Against Iraq Resolution of 2002, Pub. L.
> No. 107-243, § 3(a)(1), 116 Stat. 1498, 1501 (codified at 50 U.S.C.
> § 1541 note) (authorizing the use of force to "defend the national
> security of the United States against the continuing threat posed by
> Iraq").  Moreover, the case law confirms that the authority to detain
> under the AUMF is tethered to there being active hostilities between
> the United States and the Taliban and Al Qaeda – not to an ongoing
> conflict in Afghanistan.  <u>See</u> <u>Gul v. Biden</u>, 2021 WL 5206199,
> at *2-3; <u>Al-Alwi v. Trump</u>, 901 F.3d at 299; <u>Aamer v. Obama</u>, 742
> F.3d at 1041; <u>Al-Bihani v. Obama</u>, 590 F.3d at 871-72.

<u>Paracha v. Biden</u>, 2022 WL 2952493, at *4 n.3.

Contrary to Mr. Rahim's assertions, "[t]he determination of when hostilities have

ceased is a political decision, and [the Court] defer[s] to the Executive's opinion on the matter, at

least in the absence of an authoritative congressional declaration purporting to terminate the

war."  <u>Al-Bihani v. Obama</u>, 590 F.3d 866, 874 (D.C. Cir. 2010); <u>see also</u> <u>Al-Alwi v. Trump</u>, 901

F.3d at 299 ("If the 'life of a statute' conferring war powers on the Executive 'is defined by the

existence of a war, Congress leaves the determination of when a war is concluded to the usual

political agencies of the Government.'" (quoting <u>Ludecke v. Watkins</u>, 335 U.S. 160, 169 n.13

(1948))).  As in Paracha, the Court will defer to the Executive Branch's representations about

ongoing hostilities between the United States and Al Qaeda when they are adequately supported

by the record evidence.  See Al-Alwi v. Trump, 901 F.3d at 299; see also Ali v. Trump, 317 F.

Supp. 3d at 487; Gul v. Biden, 2021 WL 5206199, at *3-4.

    In Paracha, the Court applied this deferential standard and concluded that "the

United States is still engaged in active hostilities with Al Qaeda and that '[t]he Government's

authority to detain [Mr. Rahim] pursuant to the AUMF has not terminated.'"  Paracha v.

Biden, 2022 WL 2952493, at *4 (quoting Gul v. Biden, 2021 WL 5206199, at *4).  That

conclusion has not changed.  "[T]he record clearly establishes that the United States continues to

be engaged in active hostilities with Al Qaeda and its associated forces."  Id. at *5.[1]  To date,

numerous officials of the Executive Branch have reaffirmed that hostilities with al Qaeda and its

affiliates have not ceased.

    As respondents point out, on September 28, 2021, General Mark Milley,

Chairman of the Joint Chief of Staff, testified before the Senate Armed Services Committee that

"Al Qaeda is in Afghanistan" and "have aspirations to reconstitute and if they develop the

---

[1]  Mr. Rahim substantially relies on the Third Geneva Convention to argue that he is
entitled to be released and repatriated because active hostilities have ceased.  See Mot. at 4-7;
Reply at 1-3; see also Commentary of 2020 to the Geneva Convention (III) Relative to the
Treatment of Prisoners, art. 118, cmt. 4456 ("A clear indication that hostilities have ended would
be the total defeat, capitulation or general demobilization of one Party, even if there are isolated
or sporadic acts of violence by remnants of that Party.").  As the Court explained in Paracha,
"[a]lthough 'the international laws of war are helpful to courts when identifying the general set
of war powers to which the AUMF speaks,' they do not displace courts' deference to the
political branches to determine when hostilities have concluded."  Paracha v. Biden, 2022
WL 2952493, at *5 n.4 (quoting Al-Bihani v. Obama, 590 F.3d at 871, and citing Al-Alwi v.
Trump, 901 F.3d at 299); see also Al-Bihani v. Obama, 590 F.3d at 872 (noting that courts rely
on "the text of relevant statutes and controlling domestic caselaw" to determine the scope of the
United States' detention authority under the AUMF).  The Court therefore proceeds by
confirming that the record evidence supports the Executive Branch's representation that
hostilities with Al Qaeda are ongoing.

capability . . . to strike." Respondents' Ex. 3 – Transcript of September 28, 2021 Senate Armed

Services Committee Hearing [Dkt. No. 171-5] at 70. He also testified that "the Al Qaeda threat

globally is still there," and he described "several affiliates worldwide, some of which are quite

capab[le] and definitely have aspirations to attack the United States." Id. at 93-94. On

October 26, 2021, Colin Kahl, Undersecretary of Defense for Policy testified before the Senate

Armed Services Committee that U.S. military efforts against al Qaeda and its affiliates include

attempts to "disrupt" these adversaries' activities and finances "in the cyber realm" and "on the

ground." Respondents Ex. 3.2 – Transcript of October 26, 2021 Senate Armed Services

Committee Hearing [Dkt. No. 171-7] at 82. Moreover, as the Court described in Paracha, on

December 7, 2021, Deputy Assistant Secretary of Defense for Irregular Warfare and

Counterterrorism Milancy Harris testified before the House Subcommittee on National Security

that

> [w]hile [the United States] ha[s] significantly degraded the terrorist
> threat with the last 20 years of sustained pressure, we still face a
> potent challenge. The terrorist threat to the U.S. homeland from
> externally directed attacks is at its lowest since 9/11, but we still face
> a number of terrorist groups committed to targeting U.S. interests
> and personnel abroad.

Paracha v. Biden, 2022 WL 2952493, at *5 (citation omitted).

These representations are supported by respondents' classified and unclassified

submissions, which detail the United States' ongoing activities against Al Qaeda. Major General

Dagvin R.M. Anderson, Vice Director for Operations for the Office of the Chairman of the Joint

Chiefs of Staff, avers that "[t]he United States has deployed forces to conduct counterterrorism

operations against Al-Qaeda and associated forces, and additionally to advise, assist, and

accompany security forces of select foreign partners on such counterterrorism operations."

Respondents' Ex. 1 – Unclassified Declaration of Dagvin R.M. Anderson [Dkt. No. 171-2] ¶ 7;

see also Respondents' Ex. 3.1 – October 22, 2021 U.S. Central Command Statement [Dkt.

No. 171-6] (announcing an airstrike in northwest Syria that was believed to have killed a senior

Al Qaeda leader and noting that "Al-Qaeda continues to present a threat to America and our

allies"). Thus, the record "manifests" that the United States remains actively engaged in

hostilities with Al Qaeda and its associated forces. See Gul v. Biden, 2021 WL 5206199, at *4

(quoting Al-Alwi v. Trump, 901 F.3d at 300); see also Paracha v. Biden, 2022 WL 2952493,

at *6.[2]

Accordingly, the Court concludes that hostilities between the United States and

Al Qaeda are ongoing, regardless of any "change in the form of hostilities." Al-Alwi v.

Trump, 901 F.3d at 300; see also Paracha v. Biden, 2022 WL 2952493, at *6. The United States'

detention authority is not "cut[] off." Al-Alwi v. Trump, 901 F.3d at 300.

For the foregoing reasons, it is hereby ORDERED that Mr. Rahim's Motion for

Order of Immediate Release ("Mot.") [Dkt. No. 170] is DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 9|21|23

---

[2]        Mr. Rahim also argues that "nothing under the law permits the government to
expand the scope of the AUMF's detention authority to cover active hostilities against 'al Qaeda
affiliates' that were not even in existence at the time of the 9/11 attacks." Reply at 4. This
argument is futile because as the Court has already concluded, the United States' detention
authority under the AUMF remains due to the ongoing hostilities with al Qaeda. Moreover, the
language of the AUMF is broad, and nothing in the AUMF or 2012 NDAA precludes the
government from acting against al Qaeda's affiliates in the fight against terrorism. "However
characterized, the Executive Branch represents, with ample support from record evidence, that
the hostilities described in the AUMF continue. In the absence of a contrary Congressional
command, that controls." Al-Alwi v. Trump, 901 F.3d at 300.